at all, and case number 15-3832, Ronald Scherer Sr v. James Wiles, or argument not to exceed 15 minutes per side, Mr. Epirush Paul for the Appellant Cross Appellee. Good morning, Your Honors. My name is Epirush Paul. I represent the Plaintiff Appellant, Mr. Scherer in the case, and I would like to reserve four minutes for rebuttal, Your Honors. Your Honors, we're here on a legal malpractice case arising from a final judgment in 2008 and affirmed on appeal. This case was dismissed on collateral estoppel grounds. I must start with the fact that there is a certain legal irony here in defendants asserting a collateral estoppel defense here. If Mr. Scherer had sought in 2011 to assert again the defense to the $6.2 million adverse judgment and his fiduciary duty counterclaim against his trustee, he would have been kicked on collateral estoppel grounds in 2011. The fact remains, then, he did not have, under the collateral estoppel doctrine, a full and fair opportunity in 2011 to litigate the claims for which the defendants are asserting the collateral estoppel doctrine here. Absent a full and fair opportunity, the collateral estoppel doctrine does not apply as to what Mr. Scherer did or did not do in 2011. Counsel, can I interrupt you just for a minute? I recognize that there doesn't seem to be any controversy about this, but I was a little puzzled. These trials came out of probate court in Ohio. These are Ohio folks that were litigating. It's Ohio law all the way through, except for perhaps the federal statute that didn't stick. What is the basis for jurisdiction? Why are we here is the question. My client has a residence in Florida. His residence changed at some point, or was he always a Florida resident? He was a Florida resident. I have to go back and look at the pleadings to see when, in fact, he changed. The basis of diversity, the basis of being here, is the fact of his being a Florida resident. He was a Florida resident at the time of the lawsuit? Yes. This issue preclusion point, let's say this other case had come out the other way and the trust had won. They get everything they seek, same claims. Could your client have sued then? Could my client have sued for legal malpractice then? Is that the question? Yes, exactly. Against the trust, or would someone say, no, those claims have been extinguished? If I could clarify the question. Given the fact that the trust, the Ronald E. Scheer Trust, would have won. I must ask the question, are you talking about the 2008 trial, if my client would have prevailed, or in the 2011 trial? 2011. The Ronald E. Scheer Trust wasn't at issue with Mr. Scheer's claims. So if the trust, if the counterclaimants had prevailed, Mr. Scheer could have still brought these claims. The reason is, well, because that goes directly to the privity issue and that goes directly to the litigation issue. If the result had been opposite, nothing would have changed as to Mr. Scheer. Because his claims were final and his counterclaims were dismissed as a sanction in 2008. And his affirmative claim, the defense of the $6.2 million judgment, that was a sanction in 2008. Let's focus on the $30 million relief. Yes. The Ronald E. Scheer Trust gets $30 million. And you're saying Ronald Scheer can come in the next year, bring the same claims and get $30 million? The Ronald E. Scheer Trust was not at issue with respect to Ron Scheer in the second case, Your Honor. To allow me to clarify for a moment, there were two trusts at issue. You only got 15 minutes. You can try to bob and weave or you can get to the heart of my question. You understand the thrust of my question, I take it. I do, and the answer is no. The answer is he could not come back and seek $30 million the way the Ronald E. Scheer Trust had sought and hypothetically won $30 million. It seems bizarre that the trust could seek $30 million, win it, and then Ronald Scheer in his individual capacity come the next year, bring similar claims and get $30 million again? But those are not the facts here, Your Honor. That's what hypotheticals are. But that's the way of testing a principle. If that's the case. You understand what I'm saying? Yes. You can deal with it or you can avoid it. It's your call. Okay. If the Ronald E. Scheer Trust recovered $30 million, yes, you're correct, but $30 million – You're correct about what? You're correct that – Ronald Scheer, the individual, could not come back the next year and bring the same claim and collect $30 million. That is correct, but that is not what is at issue in this case. At issue in this case is that in the 2011 case, Linda Scheer was the beneficiary who was bringing the claims on behalf of the Linda Scheer Trust. And Ronald Scheer's children were remainder beneficiaries of the Ronald E. Scheer Trust. So the $30 million, as you call it, is divided up. There are some that would go to Linda Scheer. There are some that would go to the children. But Ronald Scheer would still be able to bring the legal malpractice claim because Ronald Scheer's interest wasn't protected in the 2011 trial. In the first trial? In the first trial – His rights were not protected? No, Your Honor. In the first trial, his rights were protected, but because of the legal malpractice, that's what this case is for. In the second trial, Mr. Scheer's claims were never at issue. So just to put it most directly, the claims by the Ronald E. Scheer Trust did not protect Ronald E. Scheer in the 2011 trial? That's what you're saying? That seems a little counterintuitive, right? There were no claims by the Ronald E. Scheer Trust. There were claims by the beneficiaries. But the Ronald E. Scheer Trust was a party in the 2011 case. No, Your Honor. That's why I was trying to attempt to clarify. The beneficiaries were the counterclaim defendants or the counterclaimants. Same as in 2008. It was not the trust. It was the beneficiaries. The trustee was the defendant in both cases. What's the effect of that agreement that they all signed for him to represent their interest in the case? The effect of the agreement only resolved the conflict as to Mr. Goode representing them going forward. If you look at Judge Scheward's holding with respect to when that issue was raised, it only deals with the fact that Mr. Goode, in the subsequent case, can represent them. The fact remains that there were no common interests as to the privity question. There is no common interest because the Linda Scheer Trust, Linda Scheer's interest for the Linda Scheer Trust, and Ronald Scheer's children, who were counterclaimants in the second case, don't share the same interest. One beneficiary bring a claim in 2011, and then a year later could another beneficiary of the trust bring basically the same claim, but just it's protecting that beneficiary. Correct. You can keep doing that. Yes, Your Honor, because the beneficiaries have separate interests. They have separate damages, separate beneficial interests, and that's particularly the case here under the collateral estoppel doctrine. On the privity issue, in order for my client to be dismissed on collateral estoppel grounds, they have to have the same legal right, the same legal relief, the same proprietary interest, and a mutuality of interest. So if the results were different in the underlying case, for example, if Bank One, as the trustee in 2011, had prevailed, I'm sorry, had the counterclaimants prevailed, it would have made not one iota of difference to Mr. Scheer, for example. The other counterclaimants could have, Bank One would have been bound to the other counterclaimants. For example, Linda Scheer and Ronald Scheer's children. But Mr. Scheer could not enforce any right whatsoever as a result of that judgment. I guess it's in March in the tax case involving Ronald Scheer where the district court, I guess the Southern District of Ohio, says that the Ronald E. Scheer Trust is the alter ego of Ronald Scheer. If that's accurate, does that have any implication on this case? I don't believe so. One, we would contest that. But if that's accurate, I wouldn't believe that it has necessarily any difference. These were discrete issues. Do you know if that case was appealed? The tax case that just came down, it just came down. I do not know whether it was appealed. I'm not his counsel in that case. I have to go check to see whether it was appealed. So let's just say it's accurate that the trust is the alter ego for Ronald Scheer. What does that do to this case? I don't think it does anything to this case, Your Honor. I think we move forward as we stand in this case. And that's because the trust was only a defendant and not a counterclaimant in 2011? The trust was not a party in 2011. It was Ronald Scheer who was a defendant as to the final accounting matter, and the other counterclaimants, which were Linda Scheer and the children, who were counterclaimants pursuing affirmative claims against the trust. So the actual trusts weren't defendants or plaintiffs in the case. I thought you said earlier the trust was a defendant, just not a counterclaimant. I misheard you. That's what I thought you said. No, Your Honor. I apologize if I say that. But, no, the trust wasn't a party. The beneficiaries were parties. What was the purpose of that 2011 proceeding? Was that just to find out how much money was involved and where it is? Well, in part, yes, that was the final accounting. The other beneficiaries asserted their counterclaims, the breach of fiduciary duty, breach of trust counterclaims, not Mr. Scheer, because Mr. Scheer's claims were already dismissed. This was final from the previous? Yes, Your Honor. Yes, Your Honor. So the objections to the final accounting were Bank One sought a final accounting. Mr. Scheer and the other beneficiaries objected to the final accounting. There's a difference. There's a $6.2 million adverse judgment against Mr. Scheer. So what happens if you prevail here? Where does it go? Does it go back down? If I prevail here in this circuit, yes, we go back down, and we continue to litigate the legal malpractice claims. So he sues the firm that represented him in the first case? Yes, which are the defendant appellees here. What's important to note, Your Honors, is the whole concept of did he have a fair opportunity to litigate his claims. So one quick other question. Is anyone trying to collect the $6.2 million against Ronald Scheer? No. At this point, no. What are your damages? He still has the adverse judgment against him, Your Honor. He still has the judgment against him, $6.2 million judgment final on appeal. He owes that any time they want to execute on him, right? The second they pick up the phone, the second they file something, they can pursue that judgment at any time. But why should we? It sounds like an abstract question we're being asked to consider. Why should we resolve this without knowing that someone's going to try to collect that? Well, he has a $6.2 million judgment rendered against him, Your Honor. It affects his credit. Listen to both parts of the question, but we also have a record that says no one's trying to collect it at this point. But that can happen at any time, Your Honor. I mean, just because somebody's not trying to collect it now, they can collect it tomorrow. They can collect it the next day. Just because at a point in time no one's trying to collect it, it's still an adverse judgment rendered against him. It still affects his credit. It still affects a whole medley of things. It comes up all the time. But we're not here on a damages question at the end of the day, Your Honor. We're here on the question of whether my client had a full and— You have to have damages to have a claim. So that's why I'm asking the point. And I don't understand why we shouldn't insist on a record in which someone says, we're actually going to try to collect this. But we have a judgment against him. Sometime there's a statute of limitations at some point on collecting it. Yeah, but those judgments in Ohio, they can be renewed every five years. And so the judgment was rendered in 2008, and they can continue to— I believe they have 10 years to try to— Why is no one collecting it? Because he doesn't have the money to collect? I don't know why no one's collecting it, Your Honor. I don't know. I mean, they're family members and they're trust, but they could still try to collect it. The fact remains, the plaintiff is— But if they try to collect it, what is the effect of this conflict of interest waiver? The fact that they—well, that potentially would be a defense my client would have, maybe. But the fact remains that he has a judgment asserted against him, and the judgment is enough to be damaged. I mean, he has a $6.2 million judgment against him. That's damage sufficient. It's a cognizable claim, Your Honor. And the beneficiaries of that judgment are family members at this point? The beneficiaries of the judgment are the trusts. So if the trusts— Are controlled by family members. Are controlled by the trustee, and they're controlled by the trustee. The family members, I have to go back and check. Well, the bank is no longer the trustee. Bank One is no longer the trustee, but there's a successor. Right. So who is the trustee at this point? It's another institution. Another bank? I believe it's another bank, Your Honor. So they have a duty to execute on it at some point. That's right, Your Honor. They're a trustee. Yes, so clearly there is damage. There is damage to the $6.2 million judgment. Anyone can attempt to enforce it if they choose. I see my time is up. I'm willing to continue to answer questions from this panel. Why don't we hear from the friend on the other side? We haven't talked about the statute of limitations. We may talk about that in rebuttal. Thank you, Your Honor. Good morning, Your Honors. My name is Adam Armstrong. I represent James Wiles and the law firm of Wiles, Boyle, Burkholder, and Bringander Appellees and Cross Appellants in this case. I think it's important for Your Honors to remember there are two appeals in this case. Appellants have an appeal from the summary judgment rendered on collateral estoppel in my client's favor. My clients have an appeal pending from the lower court's denial of our summary judgment on the statute of limitations defense and the legal malpractice claim. We don't even get to collateral estoppel if the statute of limitations has run. And, Your Honors, the lower court committed a clear factual error when determining that a reasonable juror could conclude that the attorney-client relationship between Mr. Shearer and my clients continued past July 19 of 2010. Is the standard of review different between the two? It is, Your Honor. This is an abuse of discretion. It is, Your Honor. It is, Your Honor. And this court has determined that a clear error of factual determination is an abuse of discretion, and that's what we're arguing. In Ohio, a legal malpractice claim has to be brought within one year of the date of the cause of action arises. In this case, it's the termination of the attorney-client relationship. Attorney-client relationship can terminate by an affirmative, clear, and unambiguous act by either party. In this case, we have both parties making those acts. But of most relevance is the fact that Mr. Shearer, in 2010, July 19 of 2010, retained the law firm of Chorpingen, Good, and Pandora to represent his interests as well as the unified trust beneficiaries in proceeding with the underlying litigation in probate court. From that point forward. But why is it followed that the hiring of an additional firm proves you fired the other one? I mean, it happens all the time that someone wants two firms to help them, or even if they eventually want to fire the first firm, there's a transition period because you want to use the first firm to make sure you get all the information they have, all their strategy. That is often the case, Your Honor, but it's not the case here because two firms were not hired to help in the underlying trust litigation. Once the Chorpingen firm was hired in July of 2010, the Wiles firm never once appeared in the probate court, never once. Did it file a withdrawal? It did not file a withdrawal, but that's not required in Ohio for a termination of. . . It is normal practice. I agree with you. I mean, heck, an associate leaves a firm. You know, you usually have to file something with the court to say, make it clear that associate's no longer working on the case. Your Honor, I agree with you, and actually there was a local rule with the probate court in Franklin County that a motion to withdrawal should have been filed. However, the law in Ohio does not require that as a prerequisite to terminate the attorney-client relationship. What's your best proof that there was a withdrawal on the part of your client? The court never once again communicated with the Wiles firm. The court had held the Wiles firm in contempt for failure to appear at certain hearings. If the court believed the Wiles firm was in the case and they never once appeared again after July 19 of 2010, I'm pretty sure the court would have held them in contempt like they did before. Maybe just to make sure we're pointing at the same question, the question of whether there's attorney-client relationship probably is ultimately a fact question. I think that's probably true. It doesn't mean you lose, but it's probably a fact question. I'm not sure this fact question as to whether the client and attorney think they have an attorney-client relationship turns on what the court thinks. I guess I'm struggling with what that has to do with it. I mean, the question is, did the lawyer still think he or she was representing the firm and vice versa from the client? From Mr. Wiles' perspective and the firm's perspective, no. Because in May of 2010, Mr. Wiles told Mr. Scheer, we're out. Those e-mails are a little ambiguous. I don't think so, Your Honor. It says, we are out, and I think the facts prove that after Mr. Wiles said that, Mr. Scheer stopped communicating with Mr. Wiles for six months and in the interim retained the chorponing firm to represent him in the trust litigation. And from that point forward, the Wiles firm had zero involvement in the trust litigation. Wasn't there a December 2010 e-mail? There were December 2010 e-mails, but that related to Mr. Scheer's filing in the Supreme Court of Ohio, in the Office of Disciplinary Counsel, a grievance against the probate court judge. Right, but didn't Scheer and Wiles communicate with each other? They did communicate about that, but that's not related to the trust litigation. The related to test in this district for subsequent work, and I would submit the facts don't even include that the December 2010 e-mails were work, simply communications, but for subsequent legal work to relate back to an attorney-client relationship, it has to be meant to alter, fix, or correct something underlying in the trust litigation. There was nothing that was going to correct anything in the trust litigation by filing a grievance action against Judge Sheward. The chorponing firm had been hired by Mr. Scheer and the Unified Trust Beneficiary Group to prosecute all of their claims in the trust litigation after July 19 of 2010. The Wiles firm had zero involvement in it at all. What language did you pass between Wiles and Scheer to say, we're through, or you're through, or something like that? A lot of times it's between a lawyer and his client, right? Well, we have the language in May of 2010 where Mr. Wiles says, we're out, in an e-mail. Is that the same one where he says, we're out if you're out, or something like that? He does say, we're out if you're out. Was Mr. Scheer out at that point? He was not. He was not. But either party can take an affirmative act, an ambiguous, clear, and affirmative act to terminate the attorney-client relationship. And Ohio law is very clear that hiring an attorney to prosecute the exact claims that the other lawyer prosecuted or defended, that is a clear termination of the attorney-client relationship. What case is that? I just don't believe that. You're telling me a case says that if you have one law firm and you hire another law firm to work on that case, that automatically means you fired the first firm? That's just not always true. Your Honor, there are cases out of the district courts in Ohio that are cited in the brief. Do you understand the point I'm making? Clients hire two firms all the time. I do. They start with one, and they're like, whoa, there's a lot of firepower on the other side. We're bringing in another firm. That's not an insult. That's not an automatic firing of the first firm. But, Your Honor, when you hire a new firm to entirely take over the case and you're not using the old firm at all, which Mr. Shearer was not using the Wiles firm at all with the trust litigation. He relied entirely upon the Chorpening firm. In fact, But, I mean, I'm asking the questions to make sure I understand the best points you have, but what this looks like is a case where it's just not clear when it happened. I mean, the premise of Judge Marbley's decision is it's a fact question. I'm going to send it to a jury. There's some stuff pointing in both directions. But the one thing we don't have is some date where you can just say, yeah, that's when it happened. I'm not even sure that the parties know when this thing terminated. I believe we do have a date, Your Honor, and I believe it's July 19 of 2010. When they hired the second firm. That's correct because, again, the Wiles firm had nothing to do with the case afterwards. And, in fact, Mr. Shearer, he's filed a legal malpractice case against the Wiles firm. None of it includes any claims for anything that happened after July of 2010. He's filed a separate legal malpractice claim against the Chorpening firm, and that claim is from July 10 on. If the Wiles firm and the Chorpening firm were co-counsel working together, then they would be in the same case and there would be allegations in both cases. What's this? I cut you off when you were going to tell me there were some district court cases that say, under Ohio law, the hiring of a second firm is automatically the termination of the first firm. Well, let me be clear. Automatic? I don't know that that's the law, but it does say that a clear act in hiring a new lawyer can be sufficient to terminate the attorney-client relationship. So there are cases out of the Ohio courts. In the 10th District, the DeSabato case. DeSabato? DeSabato. That's cited in our brief. We have the Brzezinski case out of the 10th District. That's cited in our brief. And the Ruff case out of the 9th District of Ohio. That's, again, cited in our brief. I think we get your statute of limitations argument. I mean, I understand. I do think it's a hard question, but do you want to defend the ground on which you won? I would, Your Honor. I do. And I want to remind the Court that this is not the first time that Mr. Scheer has been before this Court and not the first time that a collateral estoppel argument has been before this Court on Mr. Scheer. He was here in 2012, and this Court held where a factual predicate or essential element of the claim being asserted has already been determined, collateral estoppel applies. So here we have a legal malpractice case, and everybody agrees that the case-within-a-case doctrine applies to this legal malpractice case. So his key point is I wasn't a participant in the 2011 litigation or counterclaims, right? That's his key point. That's correct. Okay? So now we have privity and all of this other stuff. So your friend on the other side said that Roderick Scheer Trust was not a party in 2011. Do you agree with that? I do. The beneficiaries are. And that the winnings, the $30 million, let's just focus on the $30 million, went to other beneficiaries, but none of it went to his interests, I guess. I would disagree with that. Okay. Because what the counterclaims for that $30 million figure comes from, in January of 2007 when Mr. Wiles was representing Mr. Scheer, Mr. Wiles and another lawyer filed joint counterclaims for all defendants. There was no individual counterclaim for any individual defendants. They were together. When the case was kicked back to the probate court and the chorping firm steps in in 2011 and they pursue the exact same counterclaims, the Unified Trust Beneficiary Group, including Mr. Scheer, hired the chorping firm to pursue those very same counterclaims. And Mr. Scheer was a party in the 2011 case to the trust accounting. And the trust accounting is in part what the $6.2 million judgment was based upon, the transactions that make up that $6.2 million judgment. Could he have set aside the $6.2 million judgment against him in that 2011 case? The judgment was final, Your Honor, and affirmed by the district court. So I don't think he could have set it aside. But, however— What could he have done to make it smaller or whatever? I don't see how he could have done anything to make that go away. The final accounting included that $6.2 million judgment. And the probate court was very clear in its findings of fact and conclusions law in 2011 that Mr. Scheer, as a party, and jointly with the other beneficiaries, filed joint objections to the final accounting and stated very clearly that we are going to prove that Mr. Scheer did not misappropriate those $6.2 million. And so the issue in collateral estoppel is whether facts and issues have actually been litigated in the underlying case and people have had a full and fair opportunity to do it. And the probate court was very clear that Mr. Scheer had a full and fair opportunity with new lawyers, with no discovery sanctions, to actually challenge those $6.2 million judgment, those transactions that it's based upon. Did the probate court say that in language that is before us here? It did. It's actually paragraph 230 on the findings of fact and conclusions law of 2011. I think I cite it very clearly a few times. But the probate court said he had a full and fair opportunity to challenge the transactions that make up the $6.2 million judgment, and he failed to do so. Mr. Scheer argues in this case that in 2007, because of discovery sanctions, he was unable to call Mr. Dean, who was an accountant that worked for him, Mr. Thompson, who was an accountant that worked for him. They were precluded from testifying as to certain matters. He was precluded from entering evidence. None of those preclusions occurred in 2011. He had a full and fair opportunity to present evidence, whatever witnesses, and he failed to do so. So for the $6.2 million judgment, the facts and issues that make up that $6.2 million judgment were litigated by Mr. Scheer in 2011. And under the case-within-a-case doctrine, he has to prove in this legal malpractice case that but for the alleged negligence, he would have been more successful in the underlying case. So he would have to prove, but for the alleged negligence, I would have successfully defended that $6.2 million judgment. Well, he had that full and fair opportunity in 2011 to do so via the trust accounting, and he failed to do so. And that's why the trial court was right in granting summary judgment in our favor. Now let me go to the second part of the argument by appellant, and that is the Privy argument. It's true he was not a party to the counterclaims. But the appellant in its brief, and I quote, says, The factual and legal issues were identical, and the identical witnesses available in 2007 to the Wiles firm were available to subsequent counsel for prosecution of the counterclaims in 2011. There's no dispute that the facts and issues in the counterclaims in 2011 were identical. And the interests of the parties, the unified trust beneficiary group, were identical. And that's clear. When they stood before the probate court in March 24, 2011, and every beneficiary said, We stand together. We have a common interest. We have a common goal. We have a collective goal. And we appoint Mr. Scheer to actually prosecute this case for us, to be our representative. Was he a party in this second case? He was to the final accounting. He actually was a named party. He was not a named party to the counterclaims. But our argument, and as the trial court found correctly, I don't understand how a trial court can find if you're not a party in the counterclaim that you can recover and have all these findings of fact. I don't understand that at all. Because collateral estoppel applies not only to parties but also privities to the parties. So if there is an interest that is identical to the parties in the case and there are certain standards of privity both defined by Ohio law and this circuit, and the trial court correctly found a few of those, that, number one, his interests were aligned. If his interests were not aligned, the beneficiaries wouldn't have stood together. They wouldn't have put arm in arm with Mr. Scheer. They waived any separate interest they may have ever had. But they never sought any separate interest. They sought counterclaims as a joint group to get money back to the trusts. That's what their counterclaims were. And then by appointing Mr. Scheer to serve as their representative to plan and coordinate strategy of the prosecution of the counterclaims with the torpening firm, he exercised control over those counterclaims on behalf of the beneficiary group. What impact, if any, does it have this recent district court finding that the Ronald E. Scheer Trust is the alter ego for Ronald Scheer? I agree with that. I'm sure you do. But I'm asking, pull the threads together. How does it affect the argument, except that it's true? I think it further shows that Mr. Scheer was in control of this trust and in control of the beneficiaries from the get-go, that their interests have always been and will always be aligned. Control of the trust means you control the beneficiaries? I believe that he does. And I believe that's why all the beneficiaries stood together and said, we don't think he did anything wrong. We're not going to ask the trustee to pursue $6.2 million. We're not going to do that. We stand together. They've not committed for all time not to pursue the $6.2 million. As of today, they have not. That's true. I can't look into the future and know if they will or not. But as of today, I know they have not. Why don't they just do that and we can just walk away and enough is enough? This case has been going on a long time, and we're fighting about an amount of money that no one seems to want. Isn't that weird? It is, Your Honor. We don't like being asked to do useless things. I understand that, Your Honor, and I think that's why the trial court was correct in granting summary judgment on the collateral estoppel. Yeah, but, I mean, this takes you back to coming up with a theory that solves the problem, and it's not easy to pull these together. It's a lot easier to say, are you going to ask for the $6.2 or not, right? It might be, Your Honor. Well, the trustee will have to ask for that money. Will it not if it's a bank? Is it a bank? Your Honor, I know it's not a bank. I think the trustee, interestingly or not, is actually one of the plaintiff's experts in this case. That's what I wondered. I saw a bank name somewhere in there, but it looked to me like the whole thing was in control of the people that are involved in it. It went from Bank One, then it went to Park National Bank, and now it's with a, I'm going to say an investment company. Is there a time limit on how long there is to enforce a judgment? And is there a point at which this case really does get moved? Your Honor, if there is, I don't know the time frame. I know that judgments in Ohio do go dormant after five years, and the judgment was in 2008, and we're now in 2016. I'd hate to see this case go, right? I mean, we might get two or three more appeals, so we'll find a way to keep it going. That was sarcasm. All right. Let's hear a rebuttal. Thank you, Your Honor. You don't sound sarcastic. May I say, Your Honor, I appreciate the sarcasm. I want to touch on a couple of things. As to the $6.2 million judgment, there's a distinction between the fact of how much money was left in the trusts for the final accounting and how the monies were allegedly taken away or absconded with. So the issue in this legal malpractice case with respect to the $6.2 million adverse judgment is not what was left in the trust. By the way, what was left in the trust after all of this? Is there anything there? I mean, there were two companies that went. . . I probably should know that sitting here today on the issues on appeal. I don't have that at the tip of my fingers. There was something left in the trust because there was an accounting done. Well, there certainly are a lot of lawyers' fees that are running against whatever was left at this point too. Well, we represent the appellant, Ronald Scheer, in this case, not the trusts. So the $6.2 million adverse judgment against my client could not have been litigated in the 2011 trial because the issue was not how much was left in the trust and where did it go. It's the propriety of Mr. Ronald Scheer and whether he absconded with the money or whether he did something wrong with the money. That issue was not litigated in the 2011 trial. The propriety of the transactions were not litigated. Whether Mr. Scheer was liable or not liable was not litigated. And again, under the collateral estoppel rule, the mutuality of interest,  had the counterclaimants prevailed, Mr. Scheer still would have been on the hook. Mr. Scheer could not enforce anything as to Bank One, and Bank One could not enforce anything as to him. Still been on the hook for $6.2 million? That's what you're referring to when you say that? Yes. Yes, Your Honor. Didn't the district court find that it could have been litigated at that time? The district court found that it could have been litigated, yes. And that's an erroneous ruling because it could not have been litigated because under the collateral estoppel doctrine, to have privity, one issue is mutuality of interest. And the test for mutuality of interest under the ABS case and under the Price case is if the result would have been opposite, what would happen to my client? My client would have still been on the hook. So if he would still be on the hook, how can he be bound? That's the analysis. I believe that's the analysis in our brief on page 46. We go through that entire analysis. What's your response to your friend on the other side who says the judgment was 2008 and after five years these things, you said earlier they can be renewed. Was this judgment renewed within five years? I do not know whether it can be renewed, but it can be renewed five years and then it can be renewed up to ten years. But I'm asking, did that happen? I am not aware of whether it happened or not, Your Honor. So if I'm getting this straight, here's the thing that seems to be happening that just does not seem right. There's an intra-family judgment, money potentially owed from some family members potentially to others. No one wants to collect that. But they want to use that factual predicate to bring money from outside the family into the family. That seems wrong. Well, Your Honor. I think I'm right about what I just said. On the facts? I am right about what I just said. No one's trying to get the money within the family from each other. That is correct, Your Honor. At the same time, they're using the predicate of that unenforced judgment to try to pull money from outside the family into the family, e.g. from the Wiles firm. That just seems wrong. If you want to collect on this malpractice, have the family members prove that they care as opposed to using it as a predicate to pull more money into the family when there's been, frankly, a lot of misbehavior in this case by this family. I don't like that. Your Honor, that would be a defense they would have to the legal malpractice claim if they wish, and that would be something that would be litigated before Judge Marbley if there's a defense. But if you win, what I fear is happening could happen. Not a single dime from the $6.2 million is ever exchanged among family members. They pull more money into the family, and that they collect. I have a strong suspicion if they get a judgment that goes against someone outside the family, I don't think they're going to wait too long to collect on that one. Am I right about that assumption? I think so. Would they collect on a judgment against the Wiles firm? Yes, they would attempt to collect. And the concern about— That just doesn't seem right. But, Your Honor, that would be a defense that could be asserted by the law firm should they wish to assert that defense at the trial court level, number one. And number two, there's still— They claim that this is an abstract debate. There's no case or controversy until anyone enforces that judgment. But, Your Honor, you do have a judgment. There's a judgment rendered against the client, so that's an adverse judgment. Unless it hasn't been renewed. Unless it hasn't been renewed, in which case the case is over. Right. And if that's the case, that would be a defense that they would assert below. But those issues and facts aren't here on this appeal, Your Honor. With respect— Mootness issues are always here. No, mootness issues are here, but they have the ability, should they wish, to renew the judgment for up to 10 years under the Ohio statutes, number one. I don't know whether it's been renewed or whether it's not been renewed. I don't know, but those— The time for renewal is done. The case is over. Yes, but they can renew it up to five years. I don't know whether the judgment has been renewed or whether it has not been renewed, but those aren't facts that are at issue on this appeal.  I'm sure we're going to want to know the information about that. We'll formally ask both parties, but I'm pretty confident we're going to want to know that information. Okay. Well, anyway, I want to hear—both sides have gone over. Do you have any other things you want to directly respond to? Yeah, I want to touch on the statute of limitations real quick. It's an abuse of discretion standard. There are facts abound. It's something that ought to go to a jury. I don't understand why the contention is we have the letters in 2013—the e-mails in December of 2010. We have additional counsel. We are out, but it was a conditional we are out. We are out. If you are out, my client was obviously not out. So that goes careening to a jury from our perspective, Your Honor. And the most important issue on the collateral estoppel, I'd like to reiterate this one more time, Your Honor. The mutuality of interest on the privity issue. If the result was the opposite in 2011, there would be not one whit of difference to my client. Yeah. No, I think—I mean, it's a powerful point. I understand it. Thank you. All right. Thanks to both of you for your helpful briefs and argument. We appreciate it. We may have a question or two after argument for you all to answer, and we'll take a brief recess.